IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 1:12-cr-74 |
| Plaintiff, : | |
| : | Judge Susan J. Dlott |
| v. : | |
| : | **ORDER DENYING DEFENDANT'S** |
| PIERRE SHAW, : | **MOTION FOR COMPASSIONATE** |
| : | **RELEASE** |
| Defendant. : | |
| : | |

This matter is before the Court on Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 55.) The United States opposes Defendant's Motion. (Doc. 56.) For the reasons set forth below, Defendant's Motion will be **DENIED**.

## I. BACKGROUND

On November 19, 2012, Defendant Pierre Shaw pled guilty to Count 1 of the Indictment, being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). (Doc. 24.) According to the Statement of Facts to which he admitted, on April 26, 2012, Shaw was arrested on an open warrant while traveling as a passenger in a vehicle operated by his girlfriend. (Doc. 20 at PageID 53.) Defendant's girlfriend consented to the search of her vehicle which resulted in the recovery of a Harrington & Richardson, Topper model 88, .12 gauge, single barrel (cut down) shot gun; a Kahr, .40 caliber, model PM40 semi-automatic pistol; 6 rounds, .38 caliber ammunition; and 8 shells, .12 gauge shotgun ammunition. (*Id.*) Defendant admitted he placed the two firearms in the truck, they were his, and his girlfriend did not know anything about them. (*Id.*) The firearms were test-fired and determined to be fully operable. (*Id.*) The firearm examination revealed that they were not manufactured in the State of Ohio, and thus traveled in interstate commerce to arrive in Ohio. (*Id.*) A review of the Defendant's criminal

history revealed that he had been convicted of crimes punishable by imprisonment for a term exceeding one year. (*Id.*)

Shaw possessed a shotgun with a barrel length of 17 ¾ inches, which qualified as a firearm described in 26 U.S.C. § 5845. (Presentence Report ("PSR") at ¶ 28.) Application Note 1 under U.S.S.G. § 4B1.2 stated that unlawfully possessing a firearm as described in 26 U.S.C. § 5845(a) is a crime of violence. (*Id.*) Shaw was previously convicted of aggravated assault and two counts of robbery in the Hamilton County Court of Common Pleas and was older than 18 years of age at the time of the offense. (*Id.*) As such, Shaw was charged as an Armed Career Criminal and ultimately designated a career offender. (*Id.*)

On April 4, 2013, Defendant was sentenced to a jail term of 144 months, three years of supervised release, and a $100 special assessment. (Doc. 32 at PageID 74.) The sentence imposed was pursuant to an agreed sentence which fell below the statutory mandatory minimum and the sentencing guidelines range calculated by the Probation Officer. Defendant is currently incarcerated at the Federal Correctional Institution ("FCI") at Terre Haute with an anticipated release date of August 13, 2022. *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited 4/6/2021).

On October 15, 2020, Shaw filed a *pro se* motion for compassionate release.[1] (Doc. 50.) Counsel was appointed to represent Defendant, and his attorney filed a new Motion for Compassionate Release on December 23, 2020. (Doc. 55.) On March 1, 2021, the Government responded in opposition. (Doc. 56.)

In his Motion, Defendant argues that he is entitled to compassionate release because his medical conditions combined with his incarceration increase his risk of severe illness from

---

[1] Defendant's *pro se* Motion is denied as moot, as Defendant's counsel filed a new Motion for Compassionate Release now before the Court. (Doc. 55.)

2

COVID-19. He asserts that he suffers from hypertension and breathing issues. He asks the Court to resentence him to time served and convert the remaining term of imprisonment to home confinement. The Government argues that Defendant is not entitled to release and that the sentencing factors do not support his early release. For the reasons that follow, Shaw's Motion will be **DENIED**.

## II. LEGAL STANDARD

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—

3

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Exhaustion of administrative remedies is a mandatory claim-processing rule.[2] *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). Assuming that the inmate has exhausted administrative remedies, the district court must engage in the § 3852(c)(1)(A) analysis as follows: (1) the court must find that "extraordinary and compelling reasons" warrant a reduction; (2) the court must find that a reduction is consistent with applicable policy statements issued by the sentencing commission; and (3) the court must consider the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1106 (6th Cir. 2020). However, as to the second prong, the First Step Act rendered the only U.S. Sentencing Commission Policy Statement potentially applicable to motions for compassionate release— U.S.S.G. § 1B1.13—inapplicable to cases filed by federal inmates. *Id.* at 1109, 1111. Therefore, the district court has full discretion to define extraordinary and compelling reasons without reference to the policy statement in § 1B1.13. *See id.* at 1111; *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. Jan. 6, 2021).

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553.

---

[2] There is no dispute that Defendant has exhausted his administrative remedies pursuant to 18 U.S.C. § 3852(c). Defendant sought compassionate release from the Warden of his prison, who denied the request on September 24, 2020. (Doc. 50-1 at PageID 156–57.) Defendant's new Motion for Compassionate Release (Doc. 55) was filed more than thirty days after the Warden's response.

4

These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

## III. ANALYSIS

### A. Extraordinary and Compelling Reason for Release

Having found Defendant exhausted his administrative remedies, the Court now considers the merits of Defendant's Motion. The COVID-19 pandemic is an ongoing public health crisis that is affecting daily life both inside and outside of correctional facilities. COVID-19 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) and was recognized as a pandemic in March 2020. "During the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Provost*, 474 F. Supp. 3d 819, 825 (E.D. Va. July 24, 2020) (internal quotation marks omitted) (granting motion for compassionate release).

Shaw argues that his medical conditions combined with the COVID-19 pandemic present extraordinary and compelling reasons for his early release. Based on the statistics from the Bureau of Prisons, Terre Haute FCI currently has 0 inmates and 1 staff member who have tested positive for COVID-19, as well as 427 inmates and 126 staff recovered from COVID-19. Four inmates and 0 staff deaths from COVID-19 have been reported at the facility. *See* Federal BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited 3/31/2021). The statistics suggest that although there was an outbreak at the facility, the pandemic is being managed well at FCI Terre Haute.

5

Defendant argues that he is at increased risk of serious illness from COVID-19 due to hypertension and breathing disorders. In the medical records provided to the Court, Defendant was diagnosed with hypertension on May 29, 2013 and unspecified abnormalities of breathing, described as "nocturnal gasping for breath" on June 18, 2020. (Doc. 50-1 at PageID 159.) Hypertension has been identified by the Centers for Disease Control and Prevention ("CDC") as a heart condition can increase an individual's likelihood to become severely ill from COVID-19. CDC, CORONAVIRUS DISEASE 2019 (COVID-19), *People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 4/6/2021). Defendant's breathing condition does not have a diagnosis and does not appear to match the breathing related diseases that have been identified by the CDC as conditions that may increase an individual's risk of severe illness from COVID-19.[3]

The Court finds that Defendant's hypertension and nocturnal breathing issues do not rise to the level warranting his compassionate release. Although it is possible hypertension could increase Defendant's risk of severe illness if he were to contract COVID-19, it appears from his medical records that he is otherwise generally healthy. By way of comparison, the Court found an extraordinary and compelling reason for compassionate release where a non-ambulatory and severely ill inmate suffered from a long list of severe medical conditions known to increase her risk of severe illness from COVID-19, including the non-recoverable conditions of kidney and heart failure. *United States v. Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (granting motion for compassionate release). Furthermore, in *Smith*, the Government withdrew

---

[3] Chronic lung diseases, including chronic obstructive pulmonary disease, moderate-to-severe asthma, interstitial lung disease, cystic fibrosis, and pulmonary hypertension have been identified by the CDC as breathing-related conditions that might increase an individual's risk of severe illness from COVID-19. (*Id.*) However, Defendant's medical history does not include any of these conditions.

6

its objections to Defendant's release, which is not the case here. *Id.* Defendant's asserted medical conditions simply do not rise to the same rare and extraordinary level. *See also United States v. Jenkins-Mills*, No. 3:17-CR-00025-TMKR-MRM-2, 2020 WL 6146418, at *4 (S.D. Ohio Oct. 20, 2020) (finding no extraordinary and compelling reason for compassionate release of 30-year-old defendant with medical condition of obesity).

Even if the Court were to find that Defendant's medical condition combined with the COVID-19 pandemic present an extraordinary and compelling reason for his release, the 18 U.S.C. § 3553(a) sentencing factors weigh against his release.

### B. 18 U.S.C. § 3553(a) Sentencing Factors

The Court next will consider the § 3553(a) sentencing factors, which also do not support release. Among the factors to be considered are the nature and characteristics of the Defendant's offense; Defendant's criminal history; the need for the sentence imposed to reflect the seriousness of Defendant's conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities. The Court thoroughly considered these factors at the initial sentencing hearing and its conclusions have not changed.

As to the nature and characteristics of the offense, Defendant admitted to possessing multiple firearms, including a cut down shotgun and semi-automatic pistol, six rounds of .38 caliber ammunition, and eight .12 gauge shotgun shells. He was previously convicted of offenses punishable by terms of imprisonment exceeding one year, including aggravated assault and two counts of robbery. Possessing the cut-down shotgun converted the offense into a violent crime. Although Defendant was on an open warrant at the time he possessed the firearms and ammunition, his conduct evidences he was undeterred. Had there been no police intervention, Defendant may have used the weapons and ammunition in furtherance of other violent crimes.

The Court is also concerned by Defendant's criminal history, which is extensive. (PSR, at ¶¶ 41–87.) Defendant has been involved with the criminal justice system since the age of 13 and has been incarcerated on several occasions. He was previously convicted of several violent offenses, including, but not limited to, robbery, aggravated assault, and assault. According to his PSR, records received from the Ohio Department of Rehabilitation and Corrections indicate that Defendant was recognized and admitted to being an active member of the Bloods street gang.

Defendant's pattern of criminal behaviors concerns the Court that he would be likely to commit future crimes and remain a risk to the public. Furthermore, the medical conditions from which Defendant asserts he suffers are not of the type that would prevent him from engaging in future criminal conduct so as to remove or reduce his risk to the public. *See, e.g., See Smith*, No. 15-cr-119 (S.D. Ohio Nov. 10, 2020) (Doc. 327) (defendant's condition was so deteriorated she no longer posed a threat to the community). In addition, release is also inappropriate given Defendant's disciplinary history while incarcerated, which includes assaulting a fellow inmate, refusing to obey orders, and being insolent with staff members. (Doc. 56-2 at PageID 194.)

Lastly, the Court is concerned that reducing Defendant's sentence would lead to sentencing disparities. As previously noted, Defendant's sentence fell below the statutory mandatory minimum and the range calculated by the Probation Officer. Defendant still has approximately 25% of his already-reduced sentence to serve. The Court is concerned that reducing his sentence further would undermine its original sentence, diminish the seriousness of his conduct, and hamper the effort to deter criminal conduct.

For these reasons, the Court concludes that the 18 U.S.C. § 3553(a) sentencing factors do not support a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

IV. **CONCLUSION**

For the many reasons explained herein, Defendant's Motion for Compassionate Release (Docs. 55) is **DENIED**.

**IT IS SO ORDERED.**

*Susan J. Dlott*
Judge Susan J. Dlott
United States District Court